IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH RUSSO, | : | |
| | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 11-293 |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| | : | |
| Defendants. | : | |

## OPINION

**Slomsky, J.**                                                                            **May 11, 2011**

## I.    INTRODUCTION

On May 22, 2009, Plaintiff Joseph Russo was removed from his appointed position on

the Board of Revision of Taxes ("BRT"), a department of the City of Philadelphia.  On June 25,

2009, he filed an Emergency Petition for a Special Injunction in the Commonwealth Court of

Pennsylvania seeking to be reinstated.  Plaintiff asserted that in removing him from his position,

Defendants acted under color of state law and deprived him of his Fourteenth Amendment right

to due process.  The Commonwealth Court denied the Petition.  On July 23, 2009, Plaintiff filed

another action in the Commonwealth Court again asserting a Fourteenth Amendment violation in

removing him from his position at the BRT without due process.  By Order dated August 25,

2009, the Commonwealth Court dismissed the case, finding that Plaintiff did not have a property

interest in his position on the BRT and therefore was not entitled to the due process protections

he sought prior to his termination.  This Order was affirmed by the Supreme Court of

Pennsylvania on November 17, 2010.

Plaintiff next filed the Complaint in this case pursuant to 42 U.S.C. § 1983.  He asserts

once again that his removal violated his Fourteenth Amendment right to procedural due process.

All Defendants have moved to dismiss the Complaint, asserting that Plaintiff's claims in this

matter are duplicative of the claims asserted in the state court actions and are barred by *res

judicata*.

Upon consideration of the submissions of the parties[1] and the arguments of counsel at the

hearing held on April 11, 2011, and for reasons that follow, the Court will grant the Motions to

Dismiss because the claims raised by Plaintiff in this Court are barred by *res judicata*.

## II.     FACTUAL BACKGROUND

### A.     The Parties

Plaintiff is a citizen of Pennsylvania residing in Philadelphia.  (Doc. No. 1 ¶ 3.)

Defendant City of Philadelphia ("Defendant City") is a municipality of the Commonwealth of

Pennsylvania which "established, managed, controlled, directed, and/or operated the Board of

Revision Taxes, a city department."  (Id. ¶ 4.)  Defendant Pamela Pryor Dembe ("Defendant

Dembe") is employed as President Judge of the Board of Judges of Philadelphia County.  (Id. ¶¶

6-7.)  Defendant Amy L. Kurland ("Defendant Kurland") is an individual employed by the Office

of the Inspector General of the City of Philadelphia.  (Id. ¶ 9.)  Plaintiff brings this action against

Defendants Dembe and Kurland in both their "individual capacities as well as their official

capacities as authorized policymakers and decisionmakers of the City of Philadelphia and the

---

[1]  For the purpose of deciding the Motions, the Court has considered Defendant Dembe's
Motion to Dismiss (Doc. No. 6); Defendants City and Kurland's Motion to Dismiss (Doc. No. 8);
Plaintiff's Responses in Opposition to both Motions (Doc. Nos. 9, 10), and Defendant Dembe's
Reply (Doc. No. 11), as well as the Complaint (Doc. No. 1) and the exhibits filed by the parties.

Board of Revision of Taxes." (Id. at ¶10).

**B.     Plaintiff's Termination From the Board of Revision of Taxes**

In 2004, Plaintiff was appointed by the Board of Judges to the Board of Revision of

Taxes ("BRT") for a six-year term pursuant to 72 P.S. § 5341.1. (Id. ¶¶ 17-18.)  The BRT is a

Philadelphia agency that is responsible for valuing all real property within the City of

Philadelphia.  (Id. ¶ 12.)  The BRT's property valuations are the basis for the City's property tax

assessments and collections.  (Id.)

On November 5, 2008, during the course of Plaintiff's six-year term, the City of

Philadelphia Office of Inspector General ("OIG") began an investigation into Plaintiff's conduct

while sitting as a member of the BRT.  (Id. ¶ 20.)  During the course of the investigation, the OIG

made a request to interview Plaintiff.  He agreed to be questioned and on May 8, 2009, Plaintiff

"attempted" to submit to the interview.  (Id. ¶¶ 21, 22.)  Plaintiff alleges that during the

questioning the OIG investigator posed questions beyond the scope of the investigation and

authority of the agency.  (Id. ¶ 23.)  On that basis, Plaintiff was advised by counsel to stop

answering the questions.  (Id. ¶ 24.)

The OIG subsequently tendered a report recommending Plaintiff's dismissal.  (Id. ¶ 26.)

Plaintiff alleges that the OIG report was based primarily on his testimony at the trial of

Pennsylvania State Senator Vincent Fumo.  (Id. ¶ 26.)  The report states that Plaintiff failed to

disclose his involvement with various political campaigns on city and state ethics forms, and

accuses Plaintiff of receiving significant reimbursement for work he performed on these political

campaigns.  (Id. ¶¶ 29-30.)  Plaintiff avers that he never engaged in any work on the political

campaigns, nor did he retain any money in conjunction with the campaigns.[2]  (Id. ¶¶ 29-30.)  On

May, 22, 2009, Defendant Dembe issued an order removing Plaintiff from his appointed position

on the BRT.  (Id. ¶ 32.)  No formal or informal hearing was held and no formal opinion was

issued in support of Plaintiff's dismissal.  (Id. ¶ 33.)  Plaintiff alleges that the order of removal

was based on the OIG recommendation and a letter from Philadelphia Mayor Michael Nutter.

(Id. ¶ 32.)

## C.    State Court Proceedings

Plaintiff and Defendants have met twice before in state court**.**  As outlined above, on June

25, 2009, Plaintiff filed an Emergency Petition for a Special Injunction and a complaint in equity

in the Commonwealth Court of Pennsylvania.  (Doc. No. 6 at 2, Doc. No. 8 at 2).  In both the

Emergency Petition and the complaint, Plaintiff claimed that his "termination was improper and

he was not provided his due process rights to be heard on this issue."  (Doc. No. 6, Ex. "A" ¶ 22;

"Emergency Petition" Doc. No. 8, Ex. "A" ¶ 22; "Commonwealth Court Complaint" Doc. No. 8,

Ex. "B" ¶¶ 22-23.)   The Commonwealth Court denied Plaintiff's request for an injunction.

Plaintiff then filed another complaint in the Commonwealth Court of Pennsylvania.

(Doc. No. 6 at 2, Doc. No. 8 at 2).  Plaintiff again raised the alleged violation of his due process

rights based upon his removal from the BRT.  (Doc. No. 6 at 2, Doc. No. 8 at 2.)  In an Opinion

and Order dated August 25, 2009, the Commonwealth Court dismissed the complaint on the

ground that Plaintiff did not have a property interest in his position protected by the due process

---

[2] Plaintiff alleges that he did receive money from a campaign, but that the money was received erroneously and "immediately forwarded to the rightful recipient, Louis Leonetti."  (Id. at ¶ 31.)

4

clause.  (Doc. No. 6, Ex. "E;" Doc. No. 8, Ex. "E.")[3]  Plaintiff appealed this Order to the

Supreme Court of Pennsylvania, which affirmed it on November 17, 2010.  (Doc. No. 6 at 3.)

### D.    Federal Court Proceeding

On January 31, 2011, Plaintiff filed the Complaint in this Court.  (Doc. No. 1.)  Plaintiff

avers that he has a property interest in his employment protected by the Fourteenth Amendment

to the United States Constitution and that his termination from the BRT without a pre-

termination hearing deprived him of Due Process of Law in violation of the Fourteenth

Amendment. (Id. at ¶ 34-35.)   On February 10, 2011, Defendant Dembe filed a Motion to

Dismiss.  (Doc. No. 6.)  The following day, Defendants City and Kurland also filed a Motion to

Dismiss.  (Doc. No. 8.)  The Court held a hearing on the Motions on April 11, 2011.

## III.    LEGAL STANDARD

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) has been

the subject of recent examination, culminating with the Supreme Court's Opinion in Ashcroft v.

Iqbal, 129 S. Ct. 1937 (2009).  After Iqbal it is clear that "[t]hreadbare recitals of the elements of

a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule

12(b)(6) motion to dismiss.  Id. at 1949; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544

(2007).  Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v.

Warminster Twp., No. 10-1294, 2010 WL 5071779 (3d Cir. Dec. 14, 2010), set forth a three-part

analysis that a district court in this Circuit must conduct in evaluating whether allegations in a

complaint survive a 12(b)(6) motion to dismiss.  2010 WL 5071779, at *4; see also Fowler v.

---

[3]  The Opinion and Order of August 25, 2011 were not published.  The Honorable Dan Pellegrini authored the Opinion of the Court and the Court's reasoning is discussed more fully below.

UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (applying the principles of Iqbal and articulating the 12(b)(6) analysis as a two-part test).

"First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" Santiago v. Warminster Twp., 2010 WL 5071779, at *4 (quoting Iqbal, 129 S. Ct. at 1947-50).

With respect to what a court may consider in determining the preclusive effect of a judgment under a Fed. R. Civ. P. 12(b)(6) motion to dismiss,[4] the Third Circuit has explained:

> In reviewing a Rule 12(b)(6) motion, it is well-established that a court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004). In the context of deciding a Rule 12(b)(6) motion that raises issue preclusion concerns, and where a plaintiff has not included the existence or substance of the prior adjudications in the body of, or attachments to, its complaint, it is axiomatic that a court must still consider the prior adjudication in order to determine whether issue preclusion bars that plaintiff's claims. Thus, we have held that a prior judicial opinion constitutes a public record of which a court may take judicial notice. Id. We have also held, however, that a court may do so on a motion to dismiss only to establish the existence of the opinion, and not for the truth of the facts asserted in the opinion. Id. "'[A] court that examines a transcript of a prior proceeding to find facts converts a motion to dismiss into a motion for summary judgment.'" Id. (citation omitted).

M & M Stone Co. v. Pennsylvania, 388 Fed. App'x 156, 162 (3d Cir. 2010).

---

[4] Although issue preclusion "is an affirmative defense, it may be raised in a motion to dismiss under Federal Civil Procedure Rule 12(b)(6)." M & M Stone Co. v. Pennsylvania, 388 Fed. App'x 156, 162 (3d Cir. 2010) (citing Connelly Found. v. Sch. Dist. of Haverford Twp., 461 F.2d 495, 496 (3d Cir. 1972)).

## IV. DISCUSSION

For reasons that follow, the Court finds that the Complaint is barred by claim and issue preclusion, both of which are included in the doctrine of *res judicata*. In addition, even when a merits review is undertaken, it is evident from the face of the Complaint that Plaintiff did not have a property interest in his job. Thus, he was not entitled to due process protection and his Section 1983 claim fails as a matter of law.

### A. Plaintiff's Claim Is Barred By The Doctrine Of *Res Judicata* Because The Same Due Process Claim Has Been Adjudicated In State Court

The doctrine of *res judicata* requires that federal courts "give state court judgments the same preclusive effect that the issuing state courts would give them," and thus requires a federal court to apply the state court's law of preclusion. Moncrief v. Chase Manhattan Mortgage Corp., 275 Fed. App'x 149, 153 (3d Cir. 2008). See also San Remo Hotel, L.P. v. City & County of San Francisco, 545 U.S. 323, 336, 125 S. Ct. 2491, 2500 (2005) ("28 U.S.C. § 1738 provides that 'judicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State . . . .' This statute has long been understood to encompass the doctrines of res judicata, or 'claim preclusion,' and collateral estoppel, or 'issue preclusion.'"). The Third Circuit uses the term "*res judicata*" to encompass the concepts of both claim preclusion and issue preclusion. See United States v. 5 Unlabled Boxes, 572 F.3d 169, 173-74 (3d Cir. 2009) (citing Venuto v. Witco Corp., 117 F.3d 754, 758 n.5 (3d Cir. 1997)) ("'[T]he preferred usage' of the term res judicata 'encompasses both claim and issue preclusion.'"); Bierley v. Dombrowski, 309 Fed. App'x 594, at *2 (3d Cir. 2010).

In their Motions to Dismiss, Defendants argue that the Complaint in this case is barred by issue and claim preclusion because Plaintiff raised in state court the same due process claim and received an adverse decision. (Doc. No. 6 at 4, Doc. No. 8 at 4.) The two types of preclusion argued here are: (1) issue preclusion, which forecloses relitigation of an *issue* that was litigated and decided; and (2) claim preclusion, which prevents litigating a *claim* that was litigated in an earlier proceeding or that, while not actually litigated in an earlier proceeding, could have been presented. M&M Stone, 388 Fed. App'x at 161; Moncrief, 275 Fed. App'x at 153. Here, the Court holds that both issue and claim preclusion bar Plaintiff's claim. Not only did the state court decide a *claim* identical to the claim here, which is whether Plaintiff's Fourteenth Amendment right to due process was violated, but the state court also decided an *issue* identical to the issue presented in this case, which is whether Plaintiff had a property interest in his position on the BRT.

1.     Issue Preclusion

Under Pennsylvania law, the following must exist before issue preclusion may be invoked:

> (1)     The issue decided in the prior adjudication was identical with the one presented in the later action;
> (2)     There was a final judgment on the merits;
> (3)     The party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and
> (4)     The party against whom it is asserted had a full and fair opportunity to litigate.

M & M Stone, 388 Fed. App'x at 161; see also Shuder v. McDonald's Corp., 859 F.2d 266, 273 (3d Cir. 1988).

It is undisputed that the state court proceeding brought by Plaintiff in the Commonwealth Court resulted in a final judgment on the merits (See Doc. No. 6, Ex. "E;" Doc. No. 8, Ex. "E"), and that the parties to the present litigation are identical to those who were parties in the state court action. Therefore, the second and third prongs of issue preclusion have been established here. Plaintiff asserts, however, that the issue in the prior adjudication was not identical because he did not bring his case pursuant to Section 1983 as he is doing in this case. He also argues that issue preclusion does not apply because he did not have a full and fair opportunity to litigate the issue in the state court proceeding.

Identity of issues, as required by the first prong of issue preclusion under Pennsylvania law, is established when "the same general legal rules govern both cases and the facts of both cases are indistinguishable as measured by those rules." Suppan v. Dadonna, 203 F.3d 228 (3d Cir. 2000). The success of Plaintiff's Section 1983 claim here depends on whether Plaintiff had a property interest in his position on the BRT. A protected property right at stake is an element of due process and without a protected interest no recovery under § 1983 can occur. See, e.g., Biliski v. Red Clay Consol. School Dist. Bd. of Educ., 574 F.3d 214, 219 (3d Cir.2009)). See also Iles v. de Jongh, No. 09-4579, 2011 WL 1467215, at *2 (3d Cir. Apr. 19, 2011) (quoting McDaniels v. Flick, 59 F.3d 446, 458 (3d Cir.1995)) ( "The question of whether an employee has a property right in continued employment is a question of state [or territorial] law."). The issue of whether Plaintiff has a property interest in his position on the BRT has already been litigated in state court. The Commonwealth Court determined that Plaintiff did not have a property interest in his BRT position because BRT members can be removed without cause.

As discussed at length by Judge Pellegrini:

> At the core of this allegation is whether Russo is entitled to either a pre [sic] or post-termination hearing regarding his removal. . . .
>
> . . .
>
> An individual employed by a local agency is an at-will employee and does not enjoy a property right in his employment unless he has an expectation of continued employment guaranteed by contract or statute. If an employee has a property right to continued employment, the employee has both a constitutional right under the Fourteenth Amendment as well as a statutory right in Pennsylvania to a due process hearing. . . .
>
> . . .
>
> The question of whether Russo has made out a claim that his due process rights were violated hinges on whether he had a property interest in continued employment in his position as a Board member guaranteed by either contract or statute.
>
> The [BRT] was established pursuant to the Consolidation Act of 1854 and charged with the function of hearing appeals on real property valuations and correcting errors and inequities in those values. It was initially composed of City Commissioners, the City Treasurer and the Receiver of Taxes. In 1865, two appointees of the trial court were substituted for the Treasurer and the Receiver and the Commissioners' participation was limited to their senior member only. In 1867, Pennsylvania adopted a new law that resulted in the Commissioner being removed from the Board so that the Board then consisted of three Court appointees. The same Act transferred powers regarding property valuation procedures and the appointment of assessors from the City Commissioners to the Board. A law enacted in 1937 increased the Board's membership to seven individuals. They were also assigned the function of the then-abolished Board of View, which determined compensation to owners whose property was taken for public purpose. The law abolished the existing Board and assessors and provided that the seven members of the new Board would be appointed by the Judges of the Philadelphia Common Pleas Court for six-year overlapping terms.[5] A 1939 law repealed all previous acts relating to the Board of Revision of Taxes and assessors within the Count of Philadelphia. In 1964, a new law reestablished the Board in Philadelphia providing that the members of the Board could be appointed to the separated Board of View.[6] . . .

---

[5] The Act of April 28, 1937, P.L. 437.

[6] Act of June 22, 1964, Spec. Sess., P.L. 84, 26 P.S. §§ 1-801, 1-802.

In 1976, 42 Pa. C.S. §2142(b) was enacted stating the following:

> **(b) Terms of office.--**The members of boards of viewers shall serve for a term of not less than three nor more than six years, as stated in the appointment, whether such appointment is for an original or partly expired term. **All appointments shall be subject to the power of the court of common pleas *to remove members of the board without cause* and to appoint successors**. (Emphasis added.)

> Today, the Board of Revision of Taxes, which is charged with establishing real property values which serve as the basis for real estate taxes levied by the City of Philadelphia, also hears appeals of property valuations filed by City property owners. In cities of the first class, i.e. Philadelphia, the Board of Revision of Taxes is a type of Board of View that is governed by the same appointment and removal process.

> From reading the plain language of the statute, it is clear that the Board of Judges has the power to remove Board members "without cause." Because they could be so removed, Board members do not have a right to continued employment because they serve at the Board of Judges' pleasure. Because Russo did not have a continued right to employment, he had no property interest and could be removed as a board member by the Board of Judges without any hearing whatsoever.

(Doc. No. 6, Ex. "E;" Doc. No. 8, Ex. "E.")

Thus, the issue decided in the prior adjudication is identical with the one presented here: whether Plaintiff had a protected interest in his employment with the BRT, which is necessary to trigger due process protections. His assertion that he did not raise a Section 1983 *claim* in state court is not determinative. He did raise the issue that he had a property interest in his BRT position in state court, which was not decided in his favor, and the same issue is being advanced in the instant case.

Further, Plaintiff, the party against whom issue preclusion is asserted, had a full and fair opportunity to litigate the issue in the prior state court actions. He had the opportunity to defend his state court claims in his briefs filed with the Commonwealth Court and at oral argument before the same court. Plaintiff even was afforded the opportunity to appeal the matter to the Pennsylvania Supreme Court, and took advantage of that process.

Thus, all the elements that must be applied for issue preclusion to take effect are present here. Accordingly, the Court finds that Plaintiff's claims are barred by issue preclusion and therefore *res judicata*.

2.     Claim Preclusion

Under Pennsylvania law, claim preclusion turns on whether the underlying events giving rise to the legal claims asserted are essentially similar. Turner v. Crawford Square Apts. III, L.P., 449 F.3d 542, 549 (3d Cir. 2006); see also McArdle v. Tronetti, 627 A.2d 1219 (Pa. Super. Ct. 1993); In Re Jones & Laughlin Steel Corp., 477 A.2d 527 (Pa. Super. Ct. 1984). Pennsylvania courts have recognized that in determining whether a single claim or cause of action is present, the court may consider "the identity of the acts complained of, the demand for recovery, the identity of the witnesses, documents, and facts alleged." Turner, 449 F.3d at 549. Here, the events giving rise to the legal claims made in both state and federal court are identical. More importantly, the claims themselves are identical. In both the state court proceedings and the case before the Court, Plaintiff claims his Fourteenth Amendment right to due process has been violated.

Pennsylvania law provides that in order for claim preclusion to apply, the claims must share four conditions:

    (1)     The thing sued upon or for;
    (2)     The cause of action;
    (3)     The persons and parties to the action; and
    (4)     The capacity of the parties to sue or be sued.

Turner, 449 F.3d at 548. The first, third, and fourth conditions are satisfied here and are not in dispute. The parties in both actions are identical, the thing sued upon – the termination of Plaintiff's employment – is the same, and there is no issue as to the capacity of the defendants to be sued in either case. Plaintiff argues, however, that the cause of action in the present case is not identical to the cause of action asserted in the prior state court litigation because he did not base his claim on Section 1983. This is the same argument he unpersuasively made to defeat the doctrine of issue preclusion.

The underlying events giving rise to the legal claim in the state court action and in the instant case are identical. Plaintiff's state court complaints assert that Plaintiff "was not provided his due process rights to be heard on this issue." ("Emergency Petition" Doc. No. 6, Ex. A ¶ 22; Doc. No. 8 at Ex. A ¶ 22, Ex. B (Commonwealth Court Complaint) at ¶ 22-23). Plaintiff's claim in the underlying state court action was whether he was entitled to due process protection prior to his termination and, if so, whether he was afforded due process. While Plaintiff did not bring an action under Section 1983 in state court, Section 1983 is not the substantive claim being sued upon here. Section 1983 does not create a substantive right. Rather, it is "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." City of Monterey v. Del Monte

<u>Dunes</u>, 526 U.S. 687, 749 n.9 (1999); <u>see also</u> <u>Gruenke v. Seip</u>, 225 F.3d 290, 298 (3d Cir. 2000). Thus, the right upon which Plaintiff presents his claim here is the right to procedural due process, which is the same right asserted in the state court actions.

Accordingly, the four conditions which must be satisfied for claim preclusion to apply are present here. Claim preclusion therefore bars Plaintiff from re-litigating the claims alleged in the Complaint filed in this case.

**B.** **Plaintiff is Not Entitled to Due Process Because He Did Not Have a Property Interest in His Job**

Even if the Court considers the merits of Plaintiff's claim and accepts as true the factual allegations contained in the Complaint, Plaintiff has failed to state a claim for a violation of procedural due process under Section 1983. Plaintiff did not have a property interest in his job as a matter of law and therefore was not entitled to due process prior to his termination.

To state a procedural due process claim, a plaintiff must allege that "'(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law.'" <u>Iles</u>, 2011 WL 1467215, at *2 (quoting <u>Biliski v. Red Clay Consol. School Dist. Bd. of Educ.</u>, 574 F.3d 214, 219 (3d Cir.2009)). "The question of whether an employee has a property right in continued employment is a question of state [or territorial] law." <u>Id.</u> (quoting <u>McDaniels</u>, 59 F.3d at 458). Before determining whether a public employee has a property right in his employment under state law, a court should "examine the various statutory provisions governing public employment" in the state. <u>Id.</u> "Employee classifications contained in the statutory

14

provisions are important because they determine which employees are entitled to due process protection before termination." Id.

> Philadelphia's BRT was created by statute in June 1939. Pursuant to law, for the next seventy years, the BRT's seven members were appointed for terms of six years by a majority of the judges serving on the Philadelphia County Court of Common Pleas. See 72 P.S. §§ 5341.1, 5341.2. The BRT assesses the value of real property in Philadelphia, examines tax returns, and hears appeals from assessments. See 72 P.S. §§ 5341.7, 5341.8, 5341.11, 5341.14.

Board of Revision of Taxes v. City of Philadelphia, 4 A.3d 610, 615 (Pa. 2010).

Members of the BRT may also be appointed to a separate Board of View,[7] which is subject to the same power of appointment by the Philadelphia Court of Common Pleas and a term of service "of not less than three nor more than six years." 42 Pa. C.S. § 2142(b). An appointment to the Board of View "shall be subject to the power of the court of common pleas to remove members of the board *without cause* and to appoint successors." Id.

The statute governing the BRT does not include the emphasized language regarding removal. However, as Judge Pellegrini apparently found,[8] the statute does contain language establishing that a member of the BRT is subject to removal by the Court of Common Pleas.[9]

---

[7] The function of the Board of View is to hear condemnation appeals.

[8] See page 11, *supra*.

[9] Title 72, Pennsylvania Statute, Section 5341.2 provides:

> [J]udges shall appoint a member of the board for the full term of six years whenever, after the effective date of this act, any vacancy shall occur, whether by reason of the termination of an incumbent's term, his death, resignation or removal.

Further, the legislative history of the statutes governing both Boards reveal that the role and function of these two separate boards evolved from a single Board and that this single Board was subject to the power of appointment and removal of the Philadelphia Court of Common Pleas.[10] Thus, it is apparent that the BRT is subject to the same power of appointment and removal as is the Board of View.  See Russo v. City of Philadelphia, No. 340 M.D. 2009 (Commonwealth Court of Pennsylvania), Doc. No. 6, Ex. C.

Plaintiff, as a member of the BRT, was therefore an at-will employee and was not entitled to a hearing prior to his termination.  Dean v. City of Coatesville, No. 09-4399, 2010 WL 1005142, at *3-4 (E.D. Pa. Mar. 17, 2010) (under Pennsylvania law, at-will employees may be fired without cause and without a hearing, unless a statute or contract provides otherwise).

Plaintiff has not shown that he has a property interest in his position on the BRT.  The absence of a property interest provides a separate and independent basis for dismissal of the Complaint.  Without a property interest in his position with the BRT, Plaintiff cannot establish a procedural due process violation.

## V.    CONCLUSION

For the foregoing reasons, the Court will grant the Motions to Dismiss in their entirety. An appropriate Order follows.

---

[10]  See Act of June 22, 1964, Spec. Sess., P.L. 84, 26 P.S. §§ 1-801, 1-802.